**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **LUISA GUTTI BROWN,** | : | |
| | : | |
| Plaintiff, | : | **MEMORANDUM** |
| | : | **OPINION AND ORDER** |
| - against - | : | |
| | : | **07 Civ. 1345 (LMM) (RLE)** |
| **M.D. SYDNEY COLEMAN, et al.,** | : | |
| | : | |
| | : | |
| Defendants. | : | |

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

On February 19, 2007, Luisa Gutti Brown brought this action against Sydney Coleman, M.D., Kenneth Wemm, M.D., and Tribeca Plastic Surgery, alleging medical malpractice in connection with a June 2004 plastic surgery operation to correct facial asymmetries. (Compl. ¶¶ 13-14.) Brown retained Dr. Darrell L. Henderson as an expert witness to testify about whether Defendants met the minimum medical standard of care for the operation. Before the Court is a motion by Dr. Coleman and Tribeca Plastic Surgery to compel Dr. Henderson to produce 1) operating room records and logs from his offices for the last three years, and 2) executed authorizations for Defendants' counsel to access employment records from two schools where Dr. Henderson claims to have taught.

For the reasons that follow, Defendants' request to compel production of operating room records is **DENIED**. However, because Dr. Henderson's office purposely destroyed surgical logs after receiving the February 10, 2009 court order requiring their production, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(ii) Brown is **HEREBY PRECLUDED** from providing any

testimony regarding the number of fat grafting procedures Dr. Henderson has performed.

Defendants' request to compel authorizations to verify Dr. Henderson's role at the two medical

institutions is **GRANTED**.

## II. BACKGROUND

Following a February 10, 2009 telephone conference with the Parties, this Court ordered

Brown to produce a list of Dr. Henderson's continuing medical education classes and a list of all

operating room procedures that Dr. Henderson had performed over the last three years. (Defs.'

Notice of Mot. at 8.) On March 9, 2009, Brown submitted a response to that order indicating that

Dr. Henderson's office does not keep surgical schedules after the procedures are completed, and

does not retain accounts of his experience in performing fat grafting procedures. (*Id*.)

On April 29, 2009, Defendants moved to compel discovery with regard to information

involving Dr. Henderson's qualifications. (*Id*. at 1.) Specifically, Defendants seek to compel

Brown to produce Dr. Henderson's operating room records and logs from his offices from the

last three years, as well as authorizations from Dr. Henderson to receive his employment records

from Louisiana State University School of Medicine and Tulane University School of Medicine.

(*Id*.)

## III. DISCUSSION

**A. Defendants' Request for Operating Room Records and Logs**

Defendants seek to compel discovery of "Henderson's operating room records and logs

from his offices during the last three years . . . ." (Defs.' Notice of Mot. at 6.) They claim that Dr.

Henderson provided contradictory testimony regarding his experience in conducting fat grafting

procedures. (*Id*. at 7, 8.) Defendants maintain that the surgical logs are needed in order to

2

determine whether Dr. Henderson is qualified and credible as an expert in fat grafting. (*Id*. at 9.) In response to this Court's February 10, 2009 order to produce surgical logs, Brown submitted an affidavit wherein Dr. Henderson stated that he could not comply because surgical logs are not kept after the procedure is completed. (Pl.'s Mem. in Opp. to Defs.' Notice of Mot. (Pl.'s Mem.), Ex. F at 2.)  Defendants argue that this response "strains credibility" because the response referred to "schedules," not "logs," and contend that Dr. Henderson was required to maintain detailed logs for the past three years in order to receive accreditation by the American Association for Accreditation of Ambulatory Surgery Facilities, Inc. (AAAASF).

In response to Defendants' motion, Brown first argues that the records and logs available would not indicate the true number of fat grafting procedures performed by Dr. Henderson. (Pl.'s Mem. at 8.) Brown asserts that fat grafting procedures play a role in many different plastic surgery procedures and are not explicitly recorded as such in the logs. (*Id*.) Brown admits, however, that Dr. Henderson did in fact maintain a detailed three-year surgical log to meet AAAASF accreditation requirements. (*Id*. at 9.) She maintains that Dr. Henderson's office was AAAASF accredited at the time of the February 10, 2009 order requiring production of the surgical logs. She further maintains that, for business reasons, Dr. Henderson's physician group decided to close its medical office on March 1, 2009, and therefore destroyed the detailed surgical logs thereafter. (*Id*. at 8, 9.) Brown contends that she cannot submit the detailed surgical logs pursuant to this Court's February 10, 2009 order. The only records presently available are 40,000 to 50,000 individual patient medical files. (*Id*. at 9.) Brown argues that it would be "unduly and unnecessarily burdensome and extremely expensive" because of "an antiquated computer system in his office" (*Id*. at 9, 11.) for Dr. Henderson to compile a list indicating the

number of fat grafting procedures, or any other procedures, that he performed over the last three years. (*Id*. at 9.)

A court will only limit the discovery of relevant information when it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). Brown does not dispute that the number of fat grafting procedures performed by Dr. Henderson, especially in recent years, is relevant to his qualifications as an expert witness. Were the surgery logs still available, they would of course be discoverable. In their absence, the question before the Court is whether Dr. Henderson should be required to examine the "40,000 - 50,000 medical files" to ascertain which procedures involved fat grafting. This might be considered a fitting punishment for destroying the files, but it would be a substantial use of resources and require prolonged oversight, burdening not only Henderson, but also the Defendants and the Court. Defendants' motion to compel discovery of Dr. Henderson's operating room records and logs during the last three years is therefore **DENIED**.

Brown's explanation for Dr. Henderson's purposeful destruction of documents, explicitly ordered by the Court, however, is not adequate to avoid some penalty. Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Board of Education*, 243 F.3d 93, 107 (2d Cir.2001) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999)). Where a party violates a court order – either by destroying evidence when directed to preserve it or by failing to produce information because relevant data

4

has been destroyed – Rule 37(b) of the Federal Rules of Civil Procedure provides that the court may impose a range of sanctions, including dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorneys' fees and costs. Fed.R.Civ.P. 37(b); *see Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F .3d 99, 106-07 (2d Cir.2002); *Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees and Restaurant Employees International Union*, 212 F.R.D. 178, 219-20 (S.D.N.Y.2003). Sanctions may be imposed "on an attorney, a party, or both." *Metropolitan Opera*, 212 F.R.D. at 220.

"The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y.2004) ( "*Zubulake V*" ) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir.2001)). Generally, the severity of the sanctions imposed should be congruent with the destroyer's degree of culpability. *See Arista Records LLC v. Usenet.com, Inc.*, --- F.Supp.2d ----, No. 07 Civ. 8822 (HB), 2009 WL 1873589, at *10 (S.D.N.Y. June 30, 2009); *Reino De Espana v. American Bureau of Shipping*, No. 03 Civ. 3573, 2007 WL 1686327, at *3 (S.D.N.Y. June 6, 2007); *Metropolitan Opera*, 212 F.R.D. at 219. Moreover, any "applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West*, 167 F.3d at 779; accord *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998).

In the instant matter, the spoliation renders the court-ordered production of documents impracticable. Defendants seek to challenge the qualifications of Dr. Henderson. Part of his qualifications necessarily involves the frequency with which he has performed certain skin graft procedures. Because the relevant records have been destroyed, Brown will be precluded from

presenting any testimony in any subsequent proceeding in this case regarding the number of fat

grafting procedures Dr. Henderson has performed. Dr. Henderson's qualifications as an expert

will have to be established without considering this factor. This sanction will mitigate any

prejudice to Defendants resulting from the destruction of the logs. *See Burnett v. Venturi*, 903

F.Supp. 304, 308 (N.D.N.Y.1995) (precluding admission of testimony where party failed to

comply with the federal discovery rules).

**B. Defendants' Request for Authorization to Seek Employment Verification**

Defendants seek to compel the production of signed authorizations allowing them to

obtain records regarding Dr. Henderson's employment at Louisiana State University School of

Medicine and Tulane University School of Medicine. (Defs.' Notice of Mot. at 1.) Defendants'

counsel claims that after reviewing the websites of, and making phone calls to, both universities,

he was unable to receive confirmation that Dr. Henderson was a member of either faculty. (Defs.'

Notice of Mot. at 6.) Defendants also point to an affidavit in which Dr. Henderson does not claim

to be on the active staff at the universities, as well as a letter wherein Dr. Henderson states that he

believes he is a staff instructor. (*Id*. at 7.) Defendants seek employment records at the universities

to clarify the extent of Dr. Henderson's teaching experience and assess his credibility as a

witness and qualifications as an expert. (*Id*. at 11.)

Brown responds that Dr. Henderson's past employment status at both universities is

indisputable. She supplies email correspondence with a Louisiana State employee indicating that

Dr. Henderson was a Clinical Instructor of Surgery from February 1, 1972, through May 18,

2008. She also submits email correspondence with a Tulane University employee indicating that

Dr. Henderson was a clinical part-time faculty member from 1976 through 2001. (Pl.'s Mem.,

Ex. E.) While the email correspondence seems to confirm the positions held by Dr. Henderson at both institutions, the extent and nature of the positions is still unclear. The burden on Dr. Henderson to provide authorizations appears minimal. Indeed, he has offered to do so in his response brief. (Pl.'s Mem. at 5.) To date, however, Brown has failed to provide these authorizations, and she advances no reason, other than that they would be superfluous, to deny Defendants' request. Because the nature of Dr. Henderson's work experience at the medical schools remains uncertain, Defendants' motion to compel the authorizations is **GRANTED**.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to compel production of operating room records is **DENIED**. However, because Dr. Henderson destroyed documents regarding the number of fat grafting procedures he has performed, even after these documents were ordered to be produced by this Court, Brown is precluded from providing testimony as to this aspect of Dr. Henderson's experience. Defendants' motion to compel production of authorizations to verify Dr. Henderson's role at Louisiana State University School of Medicine and Tulane University School of Medicine is **GRANTED**. No later than **September 16, 2009**, Brown **SHALL** provide authorizations from expert Dr. Henderson allowing Defendants to obtain employment records from the medical institutions.

**SO ORDERED this 8th day of September 2009**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

7