```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------x
LUISA GUTTI BROWN,                 :
                   Plaintiff,      :    07 Civ. 1345 (LMM)
          - against -              :    MEMORANDUM AND ORDER
SYDNEY COLEMAN, M.D.,              :
KENNETH WEMM, M.D. and
TRIBECA PLASTIC SURGERY,           :
                   Defendants.     :
-----------------------------------x
```

McKENNA, D.J.,

**1.**

Plaintiff brings this action against a plastic surgeon (Dr. Coleman), an anesthesiologist (Dr. Wemm), and a group of physicians with whom they are affiliated for malpractice and failure to obtain plaintiff's informed consent in relation to a plastic surgery procedure performed in October of 2004.[1]

> A motion for summary judgment must be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." A "genuine issue" exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor. Although all inferences

---

[1] It is not disputed that New York substantive law is applicable to the present case. The parties have, in addition to arguing New York substantive law, also treated the law applicable in general to motions for summary judgment in a federal court as if governed by New York law. The applicable law on this topic is, however, federal law: Fed. R. Civ. P. 56 and cases interpreting it. Such decisions on the part of the Second Circuit are binding on this Court.

> must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion.

Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 498-99 (2d Cir. 2001) (quoting Fed. R. Civ. P. 56(c)) (other citations omitted).

### 2.

Briefly, the procedure involved the injection into plaintiff's face of fat removed from other parts of her body. In her first claim, for medical malpractice (Am. Compl. ¶¶ 32-48), plaintiff alleges that due to defendants' negligence and malpractice, she sustained

> severe trauma to the muscle and surgical area, permanent swelling and the formation of irregular, asymmetrical, hard and lumpy scar tissue all over the face, a decrease in sensitivity in the face, permanent swelling, excessive scarring and excessive presence of scar tissue, decreased lymphatic function, anxiety, post traumatic stress and insomnia, which will continue to cause her pain and suffering for the remainder of her life and as a result of which plaintiff GUTTI BROWN will continue to be incapacitated and prevented from performing useful and remunerative work both in her professional and personal lives and was otherwise rendered sick, sore, lame and disabled.

(Id. ¶ 45.)  In her second claim, for lack of informed consent (id. ¶¶ 49-53), plaintiff alleges that she

> was permanently injured, was deprived of a substantial possibility for a cure and/or a significant lessening of the permanent effects of her injuries, was caused to experience severe physical and psychological pain and suffering, required one or more surgeries and/or procedures and other treatment, incurred expenses, lost

> earnings, shortened life expectancy and in other respects was damaged.

(Id. ¶ 52.)

Plaintiff contends that the following facts are not in dispute: that Dr. Wemm "did not fully discuss the specific type of anesthesia to be rendered with the plaintiff," that he "presented Plaintiff with an anesthesia consent form" but "she was unable to read the entire form as Dr. Wemm rushed her to sign it," that "[s]aid consent form specifically called for Intravenous Sedation which would cause plaintiff to experience retrograde amnesia as well as deep sedation ... contrary to plaintiff's express wish to remain awake during the procedure," and that "Plaintiff was given a mixture of medications for the procedure which were a little excessive."  (Pl. Rule 56.1 Statement ¶¶ 1-4 (citations omitted).)

Plaintiff's expert, John Herbert, M.D., states it as his opinion that Dr. Wemm deviated from the accepted standards of care in that he (1) "did not adhere to the patient's wishes to remain alert during the procedure despite assuring her that she would be," (2) "failed to document that the plaintiff wished to be awake during the procedure," (3) "injected the patient in the consultation room, sitting in a chair in the absence of any female attendant," and (4) "permitted the surgeon to perform a procedure for which he lacked proper consent. . . ."  (Herbert Aff. (Zack Decl. Ex. A) ¶ 6.)

3

Dr. Wemm contends that "[p]rior to the surgery [he] obtained a history and performed a focused physical examination of the plaintiff [and] also discussed the anesthesia to be rendered with the plaintiff," and that "[f]ollowing the conversation, the plaintiff signed a consent form for IV sedation," which "consent form specifically states that [plaintiff] understood and accepted the planned anesthetic and had all questions answered to her satisfaction."  (Def. Rule 56.1 Statement ¶¶ 2-4 (citations omitted)).

Dr. Wemm's expert, Meg Rosenblatt, M.D., states that Dr. Wemm "administered all appropriate medications and anesthetic agents to the plaintiff during the cosmetic procedure and there were no anesthetic complications" and that Dr. Wemm "did not deviate from the standard of care and that nothing that Dr. Wemm did or failed to do caused or contributed to any of the plaintiff's alleged injuries."  (Rosenblatt Aff. (Brady Decl. Ex. 12) ¶ 12.)

### 3.

"'To establish a prima facie case of liability in a medical malpractice action, the plaintiff must prove that the defendant physician departed from good and accepted standards of medical practice and that the departure was the proximate cause of the injury or damage.'"  Johnson v. Jacobowitz, 884 N.Y.S.2d 158, 161 (2d Dep't 2009) (quoting Biggs v. Mary Immaculate Hosp., 758 N.Y.S.2d 83, 85 (2d Dep't 2003)) (other citations omitted).

> To demonstrate a lack of informed consent, the plaintiff is required to establish that (1) the defendant failed to disclose the material risks, benefits, and alternatives to the surgery which a reasonable medical practitioner under similar circumstances would have disclosed, in a manner permitting the plaintiff to make a knowledgeable evaluation, and (2) a reasonably prudent person in the plaintiff's position would not have undergone the surgery if he or she had been fully informed.

Id., 884 N.Y.S.2d at 162 (citing N.Y. Pub. Health Law § 2805-d(1), (3)) (other citations omitted).

> "Lack of informed consent means the failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical ... practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation." The plaintiff must prove that "a reasonably prudent person in the patient's position would not have undergone the treatment or diagnosis if he had been fully informed and that the lack of informed consent is a proximate cause of the injury or condition for which recovery is sought." Under New York law, "a patient making this claim must adduce medical expert testimony in support of the alleged qualitative insufficiency of the consent."

Gotlin v. Lederman, 616 F.Supp.2d 376, 396 (E.D.N.Y. 2009) (quoting N.Y. Pub. Health Law § 2805-d(1), (3), and Kourkounakis v. Russo, 167 F. App'x 255, 257 (2d Cir. 2006) (citing N.Y. C.P.L.R. § 4401-a)) (other citations omitted).

**4.**

As noted above, plaintiff's expert, Dr. Herbert, assigned four deviations from accepted standards of care to Dr. Wemm's care,

as anesthesiologist, in connection with the procedure performed by Dr. Coleman.

The first two are related: that Dr. Wemm did not adhere to plaintiff's wish to remain alert during the procedure, despite having assured her that she would be, and that Dr. Wemm failed to document plaintiff's wish to be awake during the procedure.

Plaintiff testified that she expressed to Dr. Wemm, prior to the procedure, her wish to be, and understanding that she would be, awake during the procedure. (Brown Dep. (Brady Decl. Ex. 6) 408, 412, 415.) She does not deny signing the consent form presented to her by Dr. Wemm, did not read it "totally," but "just saw the checkmark on it" (id. at 413), and "thought [she] was gonna be awake. Signing the consent, it didn't mean anything." (Id. at 414.)[2] She testified that she was asleep during the procedure. (Id. at 409.)

Dr. Wemm testified that he did not recall plaintiff saying specifically that she wanted to be awake throughout the whole procedure, but had the "impression ... that she would like to be as awake as possible during the procedure" (Wemm Dep. (Brady Decl. Ex. 4) 22-23), and responded that he "would try to keep her as awake as possible" (id. at 23); he testified that prior to the procedure he had a conversation with her "about the anesthetic

---

[2] The consent (Brady Decl. Ex. 7) indicated, by the checkmark, that plaintiff was to receive "Intravenous sedation." (Id. at 1.)

6

experience she was about to undergo," and told her that she would receive an intravenous sedation and that he "would be giving her some medication which would help her relax, and afterwards, she wouldn't remember anything about the procedure." (Id. at 18.)[3]

It is plain that, as to Dr. Herbert's first two assignments to Dr. Wemm of deviations from accepted standards of care, there is an issue of fact as to what plaintiff and Dr. Wemm said to each other. The basis of the claim of proximate cause is simple enough: had plaintiff been awake during the procedure, she could have refused to have fat removed from areas of her person from which she objected to the removal of fat.

Dr. Herbert's third assignment of a deviation from accepted standards of care -- that Dr. Wemm injected plaintiff in the consultation room, sitting in a chair, with no female attendant present, if those be the facts, is not relevant because Dr. Herbert, while it is his view that an injection should not have been given in the consultation room (Herbert Dep. (Zack Decl. Ex. E) 49-50), also testified "to a reasonable degree of medical certainty," that "no harm occurred to" plaintiff. (Id. at 53.) Nothing in Dr. Herbert's Affirmation indicates how this assignment of deviation is, in fact, a departure from the appropriate standards.

---

[3] Dr. Wemm recalled telling plaintiff that "she would feel as if she had a couple of margaritas ... during the procedure." (Wemm Dep. 44-45.) Plaintiff recalled the same thing. (Brown Dep. 412.)

Dr. Herbert's fourth assignment to Dr. Wemm of a deviance from accepted standards of care -- that Dr. Wemm permitted Dr. Coleman to perform a procedure for which Dr. Coleman lacked proper consent, in that he was removing fat from a part of her body from which she did not want it removed -- is also not relevant, for two reasons.  First, plaintiff has not shown that her desires in this regard were made known to Dr. Wemm (or that they should have been); there is no evidence that Dr. Wemm was present when Dr. Coleman marked plaintiff's body regarding the harvesting of fat, and plaintiff testified that she did not tell Dr. Wemm about the markings.  (Brown Dep. 407-408.)  Second, plaintiff has failed to cite any legal authority that requires that an anesthesiologist should, in such circumstances as are shown here, object, during a surgical procedure, to what the surgeon is doing.

**5.**

For the foregoing reasons, Dr. Wemm's motion for summary judgment is granted in part and denied in part.

Summary judgment is granted in favor of Dr. Wemm as to the third and fourth of the alleged deviations from the appropriate standard of care, i.e., that Dr. Wemm injected plaintiff in the consultation room, sitting in a chair, in the absence of any female attendant, and that Dr. Wemm permitted Dr. Coleman to remove fat from any part of plaintiff's body from which plaintiff objected to the removal of fat.  Evidence as to such alleged actions or failure

to act is not to be presented to the jury or otherwise alluded to before the jury.

Except as set forth in the preceding paragraph, Dr. Wemm's motion for summary judgment is denied.

Dated: March 4, 2010

SO ORDERED.

_____
Lawrence M. McKenna
U.S.D.J.